# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEVEN WELCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:18CV333 |
| | ) | |
| BLUE CROSS AND BLUE SHIELD OF | ) | |
| NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Plaintiff Steven Welch has sued his employer, Defendant Blue Cross and Blue Shield of North Carolina ("BCBS"), for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. BCBS moved to dismiss Welch's initial Complaint [Doc. #14], after which it was amended. BCBS has now moved to dismiss the Amended Complaint [Doc. #20]. Because Welch amended his Complaint after BCBS filed its first motion to dismiss, that motion is denied as moot. For the reasons explained below, BCBS's motion to dismiss the Amended Complaint is granted.

Allegations in the Amended Complaint assert the following. Welch, a male, works in information technology. He is a certified software tester whose career spans work performing contract services for the General Services Administration and United States Office of Management and Budget, where he helped to create the government's "'Section 508'" website providing internet accessibility to people with disabilities, and for the Kennedy Space Center. (Am. Compl. ¶¶ 20, 22-25.)

He has also worked as a Senior Network Engineer, Senior Program Developer, Project Manager, and Senior Cold Fusion Developer. (Id. ¶ 21.)

In February 2013, he began contract work for BCBS in the Web Office, later renamed Digital Marketing Department. (Id. ¶¶ 26, 28.) In June 2014, he became a full-time employee in the Digital Marketing Department, was designated as a Senior Test Specialist, and reported to Amanda McGuire, a female, until December 2015 when Deborah Jenkins, a female, became his supervisor. (Id. ¶¶ 28, 29, 31.) During the period relevant to the Amended Complaint, not only did Welch's job performance meet BCBS's expectations, but he was always described as a "high contributor". (Id. ¶¶ 27, 32.) He received more than thirty-six Proper Recognition of Personal Success awards from BCBS's Chief Executive Officer, Vice President of Digital Transformations, Director of Digital Transformation, Product Manager for Production Management and Experience, Program Manager for Quality Management, and his direct supervisors, McGuire and Jenkins. (Id. ¶¶ 33-37.)

As part of his work at BCBS, Welch helped to set up the Digital Marketing Department. (Id. ¶ 38.) As Senior Test Specialist, he tested the online tools used by BCBS customers to research and compare costs and quality of healthcare services. (Id. ¶ 39.) In addition, having performed a wide range of other job duties in the Digital Marketing Department, he helped create two of the three new positions in the department by assisting McGuire with job descriptions, resume reviews, and interviews for Web Accessibility Advisor and Principal Test Specialist. (Id. ¶¶ 39, 41, 48, 56, 57.) He wrote the processes and procedures for the Web

Accessibility Advisor and created detailed process documentation and validation testing for the Principal Test Specialist. (Id. ¶¶ 52, 58.) Although Welch had been doing the work of the department's new Web Accessibility Advisor, Principal Test Specialist, and Business Application Expert, he did not apply for any of those new, open positions because he understood they would be at the same pay grade or salary as his own job. (Id. ¶¶ 40, 42, 57.)

In January 2015, Sylvia Pellicore, a female, was hired as the Web Accessibility Advisor. (Id. ¶ 47.) She had no previous experience in healthcare or at BCBS, so Welch trained her on the processes and applications, as well as key aspects of the position. (Id. ¶¶ 49, 51.) In June 2015, Brooke Poe, a female, was hired as the Principal Test Specialist, after which Welch trained her on the core aspects of her position. (Id. ¶¶ 55, 59.) In September 2015, Kate Clements, a female, was hired as the Business Application Expert, and Welch trained her on the member benefit configuration and member website access to the provider directory and treatment cost application permissions. (Id. ¶¶ 62, 63, 65.)

Not only had Welch performed the job duties of these positions before Pellicore, Poe, and Clements were hired, but, after they were hired, he filled in for them during their absences. (Id. ¶¶ 40, 44-46, 68, 80.) Approximately thirty-five percent of the time from January 2015 to July 2017, at which time he transferred to another department, he performed his own job responsibilities and those of Pellicore, Poe, and Clements. (Id. ¶¶ 68, 69.)

3

Welch's own job responsibilities not only required at least as much ability, experience, and skill as those of Pellicore, Poe, and Clements, but they also included a number of the same duties that were assigned to Pellicore, Poe, and Clements. (Id. ¶ 72; compare id. ¶¶ 53, 60, 64 with ¶ 74.) Nevertheless, from the time of their hires in 2015 to his transfer in July 2017, Welch was always paid less than Pellicore, Poe, and Clements. (Id. ¶¶ 54, 61, 67, 81; compare ¶ 82 with ¶¶ 83-85.)

Welch's female management team – McGuire, Jenkins, and Vice President of Transformations Kelly Wage – were responsible for determining his compensation and salary classification. (Id. ¶ 77.) He repeatedly requested they compensate him equivalently to Pellicore, Poe, and Clements and reclassify his position, but those requests were denied. (Id. ¶¶ 86, 87.) Specifically, in March 2016, he asked Jenkins to reclassify his job, essentially promoting him, to Principal Test Specialist with a corresponding increase in salary, but she refused. (Id. ¶ 88.) In May 2017, he once again requested a job reclassification, this time to Business Application Expert, but that request was also denied. (Id. ¶ 89.) Because Jenkins refused Welch's requests, he sought a transfer to a different department. (Id. ¶ 94.) On July 30, 2017, Welch transferred to the System Support Services Department as a Business Application Expert. (Id. ¶ 95.) Upon Welch's information and belief, at least three men left McGuire's group because the female management team treated them differently because they were males and because the female management team ignored their complaints of discrimination. (Id. ¶ 78.)

4

Also upon Welch's information and belief, one of those men, Senior Program Manager Scott Pale, complained about unfair compensation and failure to promote because of his gender. (Id. ¶ 79.)

After receiving his right to sue letter from the Equal Employment Opportunity Commission, Welch filed suit against BCBS for sex discrimination in violation of Title VII. (Id. ¶¶ 5, 100-09.) He alleges that despite his excellent performance and assistance with creating the Digital Marketing Department, he was discriminated against and denied fair compensation[1] because he is male. (Id. ¶ 76; see also id. ¶ 92 (generally alleging gender discrimination), ¶ 93 ("The female management team favored women over men because of gender when making decisions regarding compensation, salary classification, and promotion."), ¶ 96 ("Plaintiff's requests for increases in his base salary, reclassification of his job and/or a promotion were denied because of his gender.").) BCBS has moved to dismiss this action and argues that Welch has not alleged any facts in support of his allegations that the refusals to increase his pay, reclassify his position, or retitle his position

---

[1] BCBS understood Welch to be alleging a failure to promote claim, in addition to his compensation claim. (Def.'s Br. in Supp. at 8-10.) In his response brief, however, Welch clarified that "he is seeking redress because he was denied fair compensation on the basis of his gender." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss the Am. Compl. at 13 ("Pl.'s Br. in Opp'n").) He "was not seeking a promotion to a different job with a different set of job duties; he was seeking recognition that his own job was wrongly classified and that he was underpaid". (Id.) He describes his claim as a "failure-to-promote him in place, i.e. a failure to reclassify his position and place him in a higher salary band for the work he was already performing." (Id. at 14.)

5

"were motivated by or related to his gender". (Mem. of Law in Supp. of Def.'s Second Mot. to Dismiss at 7 ("Def.'s Br. in Supp.").)

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a complaint states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further

factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

As is relevant here, Title VII prohibits an employer from discriminating "against any individual with respect to his compensation . . . because of such individual's . . . sex". 42 U.S.C. § 2000e-2(a)(1). Because a plaintiff can ultimately prove discrimination in violation of Title VII by direct evidence or by using the McDonnell Douglas burden-shifting framework, he is not required to plead a prima facie case of discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 515 (2002). "The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Id. at 510. Instead, a plaintiff alleging discrimination in violation of Title VII must "allege facts to satisfy the elements of a cause of action created by the statute". McCleary-Evans, 780 F.3d at 585 (requiring the plaintiff claiming race and sex discrimination in violation of Title VII to allege "that the Highway Administration 'fail[ed] or refus[ed] to hire' her 'because of [her] race . . . [or] sex'").

In McCleary-Evans, the plaintiff sued the Highway Administration for race and sex discrimination in violation of Title VII when it failed to hire her. Id. at 583. In her complaint, "she repeatedly alleged that the Highway Administration did not select her because of the relevant decisionmakers' bias against African American women." Id. at 585. Allegedly, "[d]uring the course of her interview, and based upon the history of hires within [the Office of Environmental Design], . . . both

7

Keenan and Sangahvi predetermined to select for both positions a White male or female candidate." Id. at 585-86 (alterations in original). However, the Fourth Circuit Court of Appeals found that "[w]hile the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is <u>consistent</u> with discrimination, it does not alone support a <u>reasonable inference</u> that the decisionmakers were motivated by bias." Id. at 586. The plaintiff alleged no facts about what occurred during her interview. Id. "Only speculation [could] fill the gaps in her complaint – speculation as to why two 'non-Black candidates' were selected to fill the positions instead of her." Id.

BCBS contends that, like the complaint in <u>McCleary-Evans</u>, Welch's Amended Complaint falls short. (Pl.'s Br. in Supp. at 8.) Welch responds that his compensation claim distinguishes this case from <u>McCleary-Evans</u>, a failure to hire case, and <u>Coleman v. Maryland Court of Appeals</u>, 626 F.3d 187 (4th Cir. 2010), a retaliation and termination case. (Pl.'s Resp. in Opp'n at 9-12.) Welch argues that he has sufficiently pled a prima facie case of discriminatory compensation – that he is a male and that his job is similar to higher paying jobs held by females. (Id. at 5 (citing <u>Brinkley-Obu v. Hughes Training, Inc.</u>, 36 F.3d 336, 343 (4th Cir. 1994) (reviewing a jury verdict and comparing the burden-shifting of compensation claims under the Equal Pay Act and Title VII)).)

Crucial, though, to the holdings in <u>McCleary-Evans</u> which established the pleading requirements of a Title VII claim and <u>Brinkley-Obu</u> which evaluated the sufficiency of the evidence supporting a Title VII compensation claim is that there

8

must be "a connection between sex and the adverse employment decision", Brinkley-Obu, 36 F.3d at 343. As the court in McCleary-Evans held, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute". 780 F.3d at 585. Here, Welch must sufficiently allege facts to make it plausible that BCBS discriminated against him with respect to his compensation because of his sex. See 42 U.S.C. § 2000e-2(a); McCleary-Evans, 780 F.3d at 585.

Welch has failed to do so. There are no factual allegations to support his claim that his job classification or pay was discriminatory. His allegations that other men transferred from McGuire's group because they felt they were being treated differently based on their gender and their complaints of discrimination were being ignored are too vague to characterize Welch's claim as plausible. He admittedly never applied for the three new positions when they were open, despite knowing that he had performed the work of those jobs prior to the hiring of Pellicore, Poe, and Clements. While he alleges that he did not apply because he understood those positions would be at his same pay grade and salary, there are no allegations of the basis of his understanding or that Welch was misled to keep him from applying for jobs that were in fact higher paying. Although he alleges that the female management team refused his repeated requests to be compensated like Pellicore, Poe, and Clements and to upgrade his position and salary classification, there are no allegations that suggest those refusals were because Welch is a male.

In sum, Welch has alleged that he was an experienced and knowledgeable Senior Test Specialist in the Digital Marketing Department whose superiors, including his female management team – McGuire, Jenkins, and Wage, recognized him often for his professional contributions. He assisted McGuire in creating the department and its new positions of Web Accessibility Advisor, Principal Test Specialist, and Business Applications Expert and interviewed applicants. He did not apply for any of those positions, though, and remained the department's Senior Test Specialist who trained Pellicore, Poe, and Clements and filled in for them in their absence. Pellicore, Poe, and Clements were always paid more than Welch, and his managers refused his requests for a pay raise or job reclassification despite the fact that he was doing Pellicore's, Poe's, and Clements' jobs along with his own approximately thirty-five percent of the time. He did eventually transition to the position of Business Applications Expert in the Systems Support Services Department. McGuire, Jenkins, Wage, Pellicore, Poe, and Clements are all females. Welch is a male.

His allegations that he was discriminated against by his female management team because of his sex are simply too conclusory. It would be difficult even to describe Welch's allegations as consistent with discrimination. There is simply no connection between his sex and his pay or job classification. Therefore, he has not sufficiently alleged facts to state a plausible claim of sex discrimination in violation of Title VII.

For the reasons stated in this Memorandum Order, IT IS HEREBY ORDERED that Defendant Blue Cross and Blue Shield of North Carolina's Motion to Dismiss [Doc. #20] be GRANTED.  IT IS FURTHER ORDERED that Defendant Blue Cross and Blue Shield of North Carolina's Motion to Dismiss the initial Complaint [Doc. #14] be DENIED AS MOOT because that Complaint has since been amended.  A judgment dismissing this action will be entered contemporaneously with this Memorandum Order.

This the 14th day of March, 2019.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge